Michael J. Riccobono, Esq.
Robert M. Pettigrew, Esq.
**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Tel:  (973) 656.1600
Fax:  (973) 656.1611
michael.riccobono@ogletree.com
robert.pettigrew@ogletree.com
*Attorneys for Defendants Honeywell International, Inc. and Ravi Sankar*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHARLES EMER, | : | Civil Action No. |
| | : | |
| Plaintiff, | : | *Civil Action* |
| | : | |
| v. | : | **NOTICE AND PETITION FOR** |
| | : | **REMOVAL OF CASE FROM THE** |
| HONEYWELL INTERNATIONAL, INC., | : | **SUPERIOR COURT OF NEW JERSEY &** |
| RAVI SANKAR, JOHN DOES 1-10, AND | : | **LOCAL CIVIL RULE 11.2** |
| XYZ CORP. 1-10, | : | **CERTIFICATION** |
| | : | |
| Defendants. | : | **Document Filed Electronically** |

**TO:**   Melissa E. Rhoads, Clerk of Court
United States District Court for the District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street, ROOM 4015
Newark, New Jersey 07101

**ON NOTICE TO:**

Ty Hyderally, Esq.
Hyderally & Associates, P.C.
33 Plymouth Street – Suite 202
Montclair, New Jersey 07042
*Attorneys for Plaintiff*

Michelle M. Smith, Esq., Clerk
The Superior Court of New Jersey
Richard Hughes Justice Complex
6th Floor North Wing
Trenton, New Jersey 08625

1

**PLEASE TAKE NOTICE:**

Defendants Honeywell International, Inc. ("Honeywell") and Ravi Sankar (collectively "Defendants") through their attorneys, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., hereby notice and petition for the removal of this action from the Superior Court of New Jersey, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, to the United States District Court for the District of New Jersey, and as grounds therefore state:

## I.      TIMELINESS OF REMOVAL

1.      On or about June 5, 2023, Plaintiff Charles Emer ("Plaintiff") commenced a civil action against Defendants in the Superior Court of New Jersey, Morris County, entitled *Charles Emer v. Honeywell International, Inc., et al.*, Docket No.: MRS-L-981-23 (the "State Action").

2.      Plaintiff effected service of the Summons and Complaint on Honeywell on June 9, 2023, by delivering a copy of the Summons and Complaint to Honeywell's registered agent for service of process.  Copies of the Summonses and Complaint are attached hereto as **Exhibit A**.

3.      On July 7, 2023, counsel for Defendants accepted service of the Summons and Complaint on behalf of Sankar by executing an Acknowledgment of Service form.

4.      These are the only process, pleadings, or orders known by Defendants to have been filed or served in this action.

5.      Pursuant to 28 U.S.C. § 1446(b), a Notice of Removal must be filed within 30 days after formal service of the Summons and Complaint upon Defendants. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 347-48 (1999).

6.      This Notice of Removal has been timely filed within thirty (30) days after formal service of the Summons and Complaint on Defendants.

## II.    VENUE

7.    The New Jersey Superior Court, Morris County, is located within the District of New Jersey. 28 U.S.C. § 110. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## III.    GROUNDS FOR REMOVAL: DIVERSITY OF CITIZENSHIP

8.    This action is properly removable under 28 U.S.C. § 1441(a) because the United States District Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), which provides, in part: "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) citizens of different States."

9.    Neither Defendant in this action is a citizen of the State of New Jersey.  At the time of the filing of the Complaint and as of the filing of the instant petition for removal, Honeywell was and remains a Delaware corporation with its principal place of business in the State of North Carolina where its corporate headquarters are located.  At the time of the filing of the Complaint and as of the filing of the instant petition for removal, Sankar was and remains a citizen of the State of North Carolina where his primary residence is located.

10.    The amount in controversy in this action expressly exceeds the sum or value of $75,000, exclusive of interest and costs in that Plaintiff is seeking "[c]ompensatory damages of not less than $1,000,000," in addition to lost wages, emotional distress damages, punitive damages and attorneys' fees.  (*See* Complaint, Wherefore Clause, pp. 14-15.)  As such, subject matter jurisdiction based on diversity of citizenship between the parties arises under 28 U.S.C. § 1332.

11.    Accordingly, this case is properly removable under 28 U.S.C. §1441(a).

## IV.    CONCLUSION

12.    Defendants have not previously sought similar relief.

13.    To date, Defendants have not filed a responsive pleading in the State Action, and no other proceedings have transpired in that action.

14.    Pursuant to 28 U.S.C. § 1446, copies of this Notice of Removal have this day been served via electronic and overnight mail upon Plaintiff's counsel, and via NJ eCourts and overnight mail upon the Clerk of the Superior Court of New Jersey.

15.    By removing this matter, Defendants do not waive or intend to waive any defense, including but not limited to insufficiency of process, insufficiency of service of process, or lack of personal jurisdiction.

**WHEREFORE**, Defendants respectfully request that this Honorable Court take jurisdiction of this action and issue all necessary orders and process to remove said action from the Superior Court of New Jersey, County of Morris County, to the United States District Court for the District of New Jersey.

Respectfully Submitted,

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**
*Attorneys for Defendants*

By:    /s/ *Michael J. Riccobono*
Michael J. Riccobono, Esq.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600
Facsimile: (973) 656-1611
michael.riccobono@ogletree.com

Date:    July 7, 2023

4

5

## CERTIFICATION PURSUANT TO LOCAL RULES 11.2

I, Michael J. Riccobono, Esq., counsel for Defendants, certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

By:    /s/ *Michael J. Riccobono*
Michael J. Riccobono, Esq.
10 Madison Avenue, Suite 400
Morristown, New Jersey 07960
Telephone: (973) 656-1600
Facsimile: (973) 656-1611
michael.riccobono@ogletree.com

Date: July 7, 2023

57200733.v1-OGLETREE

# EXHIBIT A

**Ty Hyderally, Esq. (ID# 023231993)**
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET
SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
Attorneys for Plaintiff: Charles Emer

| | |
|---|---|
| **CHARLES EMER,** | SUPERIOR COURT OF NEW JERSEY |
| | LAW DIVISION: MORRIS COUNTY |
| **PLAINTIFF,** | DOCKET NO.: |
| | |
| **VS.** | CIVIL ACTION |
| | |
| **HONEYWELL INTERNATIONAL,** | |
| **INC., RAVI SANKAR, JOHN DOES 1-10,** | **COMPLAINT AND JURY DEMAND** |
| **AND XYZ CORP. 1-10,** | |
| | |
| **DEFENDANTS.** | |

Plaintiff, Charles Emer ("Emer" or "Plaintiff"), residing at 2 Tower Road, Martinsville, New Jersey 08836, by way of this Complaint against the Defendants, Honeywell International, Inc. ("Honeywell"), Ravi Sankar ("Mr. Sankar"), John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively the "Defendants") hereby says:

## I. Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD") (Racial Discrimination/Harassment); (2) a violation of the LAD. (Color Discrimination/Harassment); (3) a violation of the LAD (National Origin Discrimination/Harassment); (4) a violation of the LAD (Retaliation); (5) Breach of Implied/Oral Contract; and (6) Promissory Estoppel.

2.    This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiff has satisfied all prerequisites to bringing these claims.

3.    Venue is appropriate in this court since Defendants do business in Morris County; Plaintiff worked in Morris County and some of the causes of action accrued in Morris County.

## II. Parties

4.    Mr. Emer, whose race is African, color is Black and National Origin is Ugandan, was the Senior Director, Data Management and Governance Strategy for Honeywell, located at 115 Tabor Road, Morris Plains, Morris County, New Jersey.

5.    Mr. Emer was an employee of Honeywell and performed job-related duties in the State of New Jersey.

6.    Honeywell primarily operates in four areas of business: aerospace, building technologies, performance materials and technologies, and safety and productivity solutions.

7.    During the relevant time period, Mr. Sankar, whose race is Asian, skin color light brown, and national origin is Indian, was the Vice President Information Management and Analytics for Honeywell.

8.    Thus, during the relevant time period, Mr. Sankar was a senior management level employee who controlled Plaintiff's workplace and supervised Plaintiff and (1) aided and abetted the employer in performing a wrongful act that caused an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided assistance; (3) knowingly and substantially assisted the employer in the principal violation of the statutes referenced herein; and/or (4) used his position as a supervisor to discriminate and retaliate under the LAD.

9.    During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management level employees who controlled Plaintiff's workplace, and supervised Plaintiff and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment,

2

Defendants ratified, embraced and added to their conduct. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

10. During the relevant time period, XYZ Corp. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

11. At all times referred to in this Complaint, employees of Honeywell, who are referred to herein, were acting within the scope of their employment at the workplace during working hours, or, to the extent that they were not so acting, Honeywell ratified, embraced and added to their conduct.

12. Thus, all Defendants are subject to suit under the statutes alleged above.

### III. Factual Allegations

13. Mr. Emer began working for Honeywell as a Senior Director, Data Management and Governance Strategy on or about October 15, 2018, at an annual base salary of $230,000. (Exhibit "1").

14. Initially, Mr. Emer reported to Maureen Butler ("Ms. Butler"), Vice President, Enterprise Information Management.

15. Throughout his employment, Mr. Emer performed his duties in an exemplary manner.

16. In fact, Mr. Emer was instrumental in building Honeywell's Master Data Management and Governance practice from the ground up.

17. Based upon his commendable performance, Mr. Emer received overall ratings of "exceeds expectations" on his annual performance reviews at the end of 2018 and 2019,

18. In addition, due to his outstanding performance, Mr. Emer received annual salary increases and bonuses.

19. In July 2019, Mr. Emer was solicited by another company, Verisk Analytics to leave his employment at Honeywell, for a substantially higher paying position with a greater bonus opportunity.

20.  Mr. Emer informed Ms. Butler, Mr. Ken Stacherski ("Mr. Stacherski"), VP Enterprise Digital Transformation and Greg Lewis ("Mr. Lewis"), Chief Financial Officer, about the offer.

21.  Mr. Lewis, Mr. Stacherski and Ms. Butler pleaded with Mr. Emer to remain at Honeywell.

22.  Mr. Lewis stated to Mr. Emer that he was an exceptional performer, that he recognized Mr. Emer's value to the company, and that he had a strong future and long-term career with Honeywell. Mr. Lewis further stated that Ms. Butler would be contacting Mr. Emer with regard to incentives which he hoped would encourage Mr. Emer to remain at Honeywell.

23.  Ms. Butler then spoke with Mr. Emer and told him that the company was increasing his annual salary to $250,000, would provide him with an annual bonus of 25% for 2019 (instead of 20%), and that he had been selected to participate in Honeywell's Band 4 Performance Plan, which is a cash-based, long-term incentive program in which only 2 percent of Honeywell's Band 4 employees participated. This long-term incentive offered had a value of $100,000. (Exhibit "2").

24.  Thus, in reliance upon Defendants' representations, Mr. Emer declined the offer from Verisk Analytics and remained at Honeywell.

25.  In March 2020, Mr. Emer was awarded a further increase in his annual salary to $263,155 and paid a bonus of approximately 25% of his 2019 salary. (Exhibit "3").

26.  In April 2020, Ms. Butler ended her employment at Honeywell.

27.  Subsequently. in June 2020, Honeywell hired Mr. Sankar as the Vice President of Information Management and Analytics for Honeywell.

28.  Thus, Mr. Sankar became Mr. Emer's direct supervisor, and Mr. Emer's world changed dramatically.

29.  During Mr. Emer's first meeting with Mr. Sankar, Mr. Sankar asked Mr. Emer what his race was, what part of Africa he was from, and to describe his background.

30.  Although Mr. Emer found such questions to be completely inappropriate and discriminatory, he felt compelled to answer that he was African and born in Uganda.

31. Mr. Sankar then stated in a sarcastic manner that Mr. Emer must feel lucky to be out of Africa and living in America.

32. Mr. Emer stated that he had been in America for almost 20 years and prior to that, lived in Australia for almost 15 years.

33. Mr. Sankar then remarked that he was surprised to hear that because Mr. Emer had a strong accent which may be an issue communicating with him and other Americans.

34. Mr. Sankar's remarks made Mr. Emer increasingly uncomfortable.

35. Mr. Emer then described his prior work experience with the United Nations for 16 years as a Senior Leader, prior to joining Honeywell.

36. Mr. Sankar then remarked to the effect of "the UN must have hired and promoted you because you are African, to meet its quota, not because of your skills. In the American Corporate world it's different, and I am expecting you to perform at the same level as other Americans."

37. Mr. Emer was shocked by Mr. Sankar's blatantly racist remark.

38. At the time, Mr. Sankar had no idea what Mr. Emer's work abilities were.

39. Mr. Emer objected to Mr. Sankar's statements, which reflected his explicit discriminatory bias against Africans, noting that Mr. Sankar had just met Mr. Emer and they had not yet worked together.

40. However, Mr. Sankar merely repeated "I'm expecting more from you."

41. Subsequently, Mr. Emer noticed a distinct difference in the way Mr. Sankar treated him and as compared to other non-African/nonblack employees.

42. For example, Mr. Sankar never had any one-on-one meetings with Mr. Emer and ignored Mr. Emer when he was in attendance at weekly team meetings, and other various meetings.

43. Mr. Sankar also embarrassed Mr. Emer during meetings by disrespecting him in front of other staff members and cutting him off during presentations.

44. In addition, Mr. Sankar rarely gave Mr. Emer his assignments directly, but would speak to Mr. Emer's reports and ask them to relay assignments to Mr. Emer.

5

45. Further, Mr. Sankar frequently bypassed Mr. Emer and went directly to Mr. Emer's reports, to give them assignments.

46. When Mr. Sankar engaged in such actions, he did not even have the courtesy to advise Mr. Emer that he had taken such an action. This frequently led to disruption in workflow and communication.

47. Mr. Sankar did not treat other non-African, non-black employees in a similar manner.

48. Thus, on or about October 14 and 15, 2020, Mr. Emer reported Mr. Sankar's discriminatory treatment and racist behavior to Human Resources. (Exhibit "4").

49. On December 8, 2020, Mr. Emer was notified that Miriam Magana Lopez ("Ms. Lopez"), Senior Human Resources Manager, had been assigned to investigate his complaints. (Exhibit "5").

50. Mr. Emer then spoke to Ms. Lopez and went through the details of the racist and discriminatory actions by Mr. Sankar, as noted above.

51. When Mr. Sankar learned about Mr. Emer's complaints of discrimination and racism, he was furious.

52. Mr. Sankar called Mr. Emer and shouted at him that "this is nonsense! This will backfire on you!" Mr. Sankar then angrily demanded that Mr. Emer immediately withdraw his complaints.

53. Despite his fear of retaliation, Mr. Emer stated that Mr. Sankar should let the process take its course.

54. Mr. Sankar became even more infuriated and screamed at Mr. Emer "You are digging your own grave!"

55. Subsequently, Honeywell failed to take any remedial or curative measures, to Mr. Emer's knowledge.

56. Thus, Mr. Sankar was emboldened to continue his discriminatory treatment of Mr. Emer and retaliate against him for his complaints of discrimination.

57. On March 3, 2021, Mr. Sankar gave Mr. Emer a discriminatory and retaliatory performance review in which he falsely underrated Mr. Emer's performance in order to deny him an

6

annual salary increase and provided him a minimal bonus of 9%, rather than the minimum 20% bonus to which he was entitled.

58. Mr. Sankar's retaliatory action was made even more clear by the fact that Mr. Emer had previously received tremendous accolades about his performance as well as exemplary performance reviews, significant bonuses, and salary increases.

59. Mr. Emer reported Mr. Sankar's discriminatory and retaliatory actions to Ms. Lopez, Mr. Lewis and Sheila Jordan ("Ms. Jordan"), Chief Information Officer, who was Mr. Sankar's direct supervisor. (Exhibits "6," "7" and "8").

60. Ms. Jordan marginalized Mr. Emer's complaints and characterized Mr. Sankar's retaliatory review as tough feedback that would make Mr. Emer "stronger and better." (Exhibit "9").

61. Ms. Jordan's failure to take appropriate or corrective measure was, in all likelihood, influenced by her prior work relationship with Mr. Sankar, as they both had worked at Cisco for approximately eight (8) years, and Ms. Jordan hired Mr. Sankar to work at Honeywell.

62. Thus, unsurprisingly, Defendants failed to take any curative or investigatory measures.

63. Thus, on March 22, 2021, Mr. Emer made another formal complaint of discrimination and retaliation to the Chief of Human Resources and requested that appropriate remedial relief be provided. (Exhibit "10").

64. Mr. Emer was advised that his complaint was assigned to Kristine Wagnar ("Ms. Wagnar") for investigation.

65. Once again, Mr. Sankar retaliated against Mr. Emer, with a clear goal of targeting him for termination.

66. On April 19, 2021, Mr. Sankar removed Mr. Emer's data quality team which he had put together from scratch, and assigned them to Mr. Emer's peer, Nelaakshi Mohta ("Ms. Mohta"), whose race is Asian, color light skinned brown, and national origin is Indian.

67. When Mr. Emer questioned Mr. Sankar about the basis for this blatant retaliatory action, Mr. Sankar merely stated that it was his decision to make.

68. Mr. Sankar's racist and discriminatory treatment continued as reflected in his interactions with Mr. Emer in May 2021.

69. On May 19, 2021, Mr. Emer was presenting a PowerPoint presentation he had created regarding a particular strategy he had developed to the Honeywell Executive Data Governance Council.

70. Mr. Emer was scheduled to present for 20 minutes. However, after approximately 5 minutes, Mr. Sankar rudely interrupted the presentation and demanded that Mr. Emer not continue to present anymore, as it was unnecessary.

71. Mr. Sankar's interruption was intentionally done to humiliate and denigrate Mr. Emer.

72. To add insult to injury, Mr. Emer later learned that Mr. Sankar presented the same PowerPoint presentation and represented that Mr. Sankar created the presentation as his own work.

73. Mr. Emer complained about Mr. Sankar's discriminatory and retaliatory actions to Ms. Wagnar. (Exhibit "11").

74. In August 2021, Ms. Wagner called Mr. Emer and advised him that she had completed her investigation and was unable to substantiate any discrimination or retaliation.

75. However, Mr. Emer was never interviewed by Ms. Wagnar, or anyone else, as part of the purported investigation.

76. Subsequently, Mr. Sankar continued to treat Mr. Emer in a discriminatory manner.

77. Mr. Sankar ignored Mr. Emer at meetings, continued to assign matters to Mr. Emer's reports without notice or consultation with Mr. Emer, and minimized interacting and communicating with Mr. Emer.

78. Thus, Mr. Emer was forced to endure a hostile work environment, which was severe or pervasive and altered his working conditions.

79. In March 2022, Mr. Emer was due to receive a $100,000 long-term incentive bonus payment, under Honeywell's Band 4 Performance Plan.

80. However, Mr. Sankar permitted Mr. Emer to receive only 30% of that award, or $30,000, which was $70,000 less than he was entitled to receive.

8

81. When Mr. Emer complained about the retaliatory action to Mr. Sankar, Mr. Sankar dismissively responded, "You can escalate it to HR if you want. I made my decision."

82. Mr. Sankar then engaged in the ultimate act of retaliation.

83. On August 30, 2022, Mr. Emer logged onto a Zoom meeting which was scheduled for his mid-year performance review with Mr. Sankar.

84. When Mr. Emer logged on, he noted that Ms. Courtney Williams, a representative from the Human Resources Department, was in the Zoom meeting with Mr. Sankar.

85. Before Mr. Emer could say anything, Mr. Sankar stated that Mr. Emer was terminated, effective immediately.

86. Mr. Emer was shocked by the blatantly retaliatory termination.

87. Mr. Emer requested to be permitted to at least send a goodbye email to his team.

88. However, Mr. Sankar stated that Mr. Emer's access had been terminated.

89. On September 14, 2022, Mr. Emer sent a complaint of race discrimination to Darius Adamczyk, Honeywell's Chairman of the Board and Chief Executive Officer (Exhibit "12").

90. On September 16, 2022, Mr. Emer received an email from Jennifer Carpenter ("Ms. Carpenter"), Vice President, Human Resources, acknowledging receipt of Mr. Emer's complaint and advised that an investigation had been opened and an investigator would be in contact with Mr. Emer the following week. (Exhibit "13).

91. The following week, Mr. Emer spoke with investigator Tiffany Fuller, and went through the details of the above-described discrimination and retaliation.

92. However, Defendants did not rescind the termination.

93. Instead, Defendants unilaterally, and without any request by Mr. Emer, sent Mr. Emer a proposed Employment Separation Agreement and Release offering him 4 weeks of severance in exchange for release of his claims.

94. Mr. Emer declined to sign the agreement.

95. Defendants' illegal actions resulted in Mr. Emer suffering significant emotional trauma, physical injury, and/or the physical manifestation of emotional distress damages.

9

MRS-L-000981-23   08/05/2023 5:01:33 PM   Pg 16 of 46   Trans ID: LCV20231713419

96. After Mr. Emer's termination, some and/or all of his job functions were given to non-African and non-black employees, such as Ms. Mohta.

97. On information and belief, the Master Data Management Team, Data Governance Team and Data Quality Team, all of which Mr. Emer built from scratch and managed since 2018, now all report into Ms. Mohta.

98. Mr. Emer had never been disciplined, before he was terminated.

99. Defendants never put Mr. Emer on a performance improvement plan regarding his performance, before they terminated Mr. Emer.

100. Mr. Emer had never been suspended, before he was terminated.

101. Mr. Emer had never been demoted, before he was terminated.

102. Mr. Emer had never been warned that his job was in jeopardy, before he was terminated.

103. At the time of his termination on August 30, 2022, Mr. Emer was earning an annual salary of $263,000. In addition, Mr. Emer was also entitled to various benefits, including but not limited to, an annual bonus of at least 20% of his salary, medical insurance, dental insurance, vision insurance, life insurance, 401(k), unlimited vacation/sick/personal days annually, approximately 12 paid holidays.

## Count I

### (New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*)
### (Race Discrimination and Harassment/Hostile Work Environment)

104. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

105. The foregoing facts and circumstances demonstrate that defendant has violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, by subjecting Plaintiff to a hostile work environment due to his race and/or discriminating against Plaintiff and/or treating Plaintiff in a disparate manner based upon Plaintiff's race.

106. Furthermore, upon information and belief, Defendants have engaged in individual and a pattern and practice of such discrimination and/or disparate treatment.

107. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional

distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

108.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

<u>Count II</u>
**(New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*)**
**(Color Discrimination and Harassment/Hostile Work Environment)**

109.    Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

110.    The foregoing facts and circumstances demonstrate that defendant has violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, by subjecting Plaintiff to a hostile work environment due to his color and/or discriminating against Plaintiff and/or treating Plaintiff in a disparate manner based upon Plaintiff's color.

111.    Furthermore, upon information and belief, Defendants have engaged in individual and a pattern and practice of such discrimination and/or disparate treatment.

112.    As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

113.    Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

11

### Count III
### (New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*)
### (National Origin Discrimination and Harassment/Hostile Work Environment)

114. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

115. The foregoing facts and circumstances demonstrate that defendant has violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, by subjecting Plaintiff to a hostile work environment due to his national origin and/or discriminating against Plaintiff and/or treating Plaintiff in a disparate manner based upon Plaintiff's national origin.

116. Furthermore, upon information and belief, Defendants have engaged in individual and a pattern and practice of such discrimination and/or disparate treatment.

117. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

118. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### Count IV
### (New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*)
### (Retaliation)

119. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

120. The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, by retaliating against Plaintiff because Plaintiff made complaints of race, color and/or national origin discrimination, hostile work environment and/or disparate treatment.

12

121. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

## Count V
### (Breach of Implied/Oral Contract)

122. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

123. Defendant Honeywell had an oral and/or written employment policy which contained an express or implied promise concerning the terms and conditions of Mr. Emer's employment, including but not limited to, Mr. Emer' receipt of certain cash based long term incentives as a consequence of Mr. Emer's participation in Honeywell's Band 4 performance programs.

124. Said policy was a definitive, established, company-wide policy.

125. In or about July 2019, Ms. Butler stated to Mr. Emer and that the company was increasing his annual salary to $250,000, would provide him with an annual bonus of 25% for 2019 (instead of 20%), and that he had been selected to participate in Honeywell's Band 4 Performance Plan, which is a cash-based, long-term incentive program in which only 2 percent of Honeywell's Band 4 employees participated. This long-term incentive offered had a value of $100,000. (Exhibit "2").

126. Ms. Buter's statement of said policy constituted an accurate representation of policy and she was authorized to make the oral statements of policy.

13

127. In addition, during July 2019, Mr. Lewis stated to Mr. Emer that he was an exceptional performer, that he recognized Mr. Emer's value to the company, and that he had a strong future and long-term career with Honeywell.

128. Such statements created an implied contract to provide Mr. Emer with long-term employment.

129. Defendants further breached their implied contractual obligations to provide Mr. Emer with a long-term career with Honeywell.

130. As a direct and proximate result of the actions of Defendant, Plaintiff has been damaged.

## Count VI
### (Promissory Estoppel)

131. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

132. The actions of Defendants give rise to the claim of promissory estoppel.

133. Defendants made a clear and definite promise to pay Plaintiff an annual bonus of at least 25% of his salary, a long-term incentive of $100,000, and a guaranteed future career at Honeywell.

134. Defendants made such promise with the expectation that Plaintiff would rely on it.

135. In reliance upon Defendants' promises, Plaintiff gave up another higher paying job offer.

136. Thus, Plaintiff reasonably relied upon Defendants' promises to his substantial detriment.

137. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered Damages.

138. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against the Defendants jointly and severally, as follows:

      A.    Compensatory damages of not less than $1,000,000;

      B.    Damages for lost wages and benefits, back pay, front pay (or reinstatement);

      C.    Damages for humiliation, mental and emotional distress;

14

D.    Statutory damages, if applicable;

E.    Punitive damages and or liquidated damages where permitted by law;

F.    Attorneys' fees and costs of suit;

G.    Lawful interest - including pre-judgment interest on lost wages;

H.    Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and

I.    Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the Defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), Plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4, TY HYDERALLY is hereby designated as trial counsel on behalf of Plaintiff.

## R. 4:5-1(b)(2) CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that there are no other parties known to me at this time who should be joined as parties to this action.

15

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:     June 5, 2023

HYDERALLY & ASSOCIATES, P.C.
*Attorneys for Plaintiff*

By:     _____
        **TY HYDERALLY, ESQ.**
        *for the Firm*

T:\Emer Charles\Pleadings\060523.COM.docx

16

# EXHIBIT "1"



**Honeywell**
THE POWER OF **CONNECTED**

Charles,

Congratulations! I am pleased to confirm our job offer for the role of Sr Director, Data Management and Governance Strategy, located in USA-Morris Plains-115 Tabor Road.

Honeywell has a distinguished history and terrific future. Our performance culture drives growth for you and our company. We hire only the best people.

Your experience and background will add great value and I sincerely hope you will accept this offer to join my team.

**ACTIONS**

- Please review the "Offer Details" below and e-Sign by 10/4/2018, indicating whether you accept the offer.
- After you accept the offer, start the Next Steps below.

If you have questions about this offer, please call me at 2243210801 or email Maureen.Butler@Honeywell.com. You may also contact your recruiter at 9734552635 or Kimberly.Atkins@Honeywell.com.

Kindest regards,
Maureen Butler

**OFFER DETAILS**

**Base Salary**
Your annual base salary will be $230000. Salary adjustments are based on performance and additional factors.

**Merit Eligibility**
Employees hired, rehired, or promoted on/after November 1st are generally not eligible for a salary increase the following year.

**Management Incentive Plan (MIP)**
You are eligible to participate in the Honeywell Management Incentive Plan (MIP) subject to the terms and conditions of the Plan. You can earn an annual bonus of 20% of your annual salary. This percent will be prorated based on your hire date. Business and personal performance are also factors in determining the bonus payout amount which may be more or less than your target bonus percent.  If your first day of eligibility under the Plan is after October 31, you are not eligible for a Management Incentive Plan payout in March of the following year.

**Benefits**
To make sure you share in the value you help create, we offer competitive total compensation and benefits. This includes health and welfare benefits, learning and educational assistance, retirement benefits, and more. Click **here** to learn more about available benefits (password: benefits).

**NEXT STEPS**

After you reply to formally accept the offer, we will contact you to start these steps.

**Background Check and Drug Screen**

- You need to pass a background check before you start work.
  - ⊕ We might contact your current and prior employers.
  - ⊕ You can ask us to not contact your current employer until after you finalize offer acceptance.
- You also need to pass a drug screen before you start work.
  - ⊕ A Honeywell representative will contact you with drug screen steps.
  - ⊕ You can review the Drugs & Alcohol in the Workplace Policy when you complete pre-employment

information.
- Complete the drug screen within the 90 days prior to your start date.

**Intellectual Property Agreement**

Your offer of employment with Honeywell as described herein is contingent upon your signing and returning a copy of Honeywell's "Employee Agreement Relating to Trade Secrets, Proprietary and Confidential Information" (the "IP Agreement") before your start date. This IP Agreement will be part of your Onboarding Portal tasks.

The position will be located in Morris Plains, NJ.  As business conditions change, relocation may be required for this role in the future. It is expected that you will be mobile and able to relocate if the business requirements for this role shift in the future and by accepting this offer, you acknowledge your ability to be mobile and possibly relocate.

**Working from Home**
Honeywell believes that employees work better, more efficiently and more collaboratively in close proximity to other employees, where ideas can be exchanged readily and decisions can be made more quickly for the benefit of the Company and our customers. All employees should work at their Assigned Location. No regular remote working arrangements are permitted unless approved in accordance with the applicable Honeywell Work from Home Policy or required by law.

*All businesses experience changing conditions. Honeywell reserves the right to change the terms and conditions of your employment to meet business needs. Your employment with Honeywell will be on an "at will" basis.*

# EXHIBIT "2"

# Honeywell

July 22, 2019

Dear Charles,

Congratulations on being selected for Honeywell's Band 4 Performance Plan. It is a pleasure to have you as a participant in this cash-based, long-term incentive program. Only 2 percent of Honeywell's Band 4 employees are participating.

The CORP leadership team identified you as a key asset for the company based on your ability to drive great results, and we strongly support your on-going success at Honeywell. We look forward to your continued focus on revenue growth, margin expansion, and return on investment.

The Performance Plan is a three-year cycle that will pay out in 2022, provided that specific business and company-wide performance metrics are met. All Plan payments are subject to the terms of the Performance Plan Award Agreement that you will receive from Human Resources.

You have been granted 500 Performance Plan Units*; each has a target value of $100 but depending on performance, can range from zero to $200. This represents a target award for the performance cycle from January 1, 2019, through December 31, 2021. Your leader will give you a Performance Plan summary with complete details on the Plan, including the payout process.

Thank you for your contributions to Honeywell. Your leadership is the ultimate differentiator in our success. Honeywell's leadership team, our employees, and our shareowners all appreciate your continued commitment to the company.

### *Your Performance Plan Unit projections in USD:*

| # Units Granted | Target Value | 150% of Target | 200% of Target |
|---|---|---|---|
| 500 | $50,000 | $75,000 | $100,000 |

*Your Performance Plan Award payment will be paid in a single cash payment in the first quarter of the year following the end of the performance period (March 2022 for the 2019-2021 performance period).*

Honeywell Internal

# EXHIBIT "3"

# Charles Emer

Sr Director Data Management
H326700

## Annualized Total Cash Value (USD)

# $326,905

| | Prior Base Salary | New Base Salary | Change |
|---|---|---|---|
| | **$255,000** | **$263,155** | **+3.20%** |

| | Prior Bonus | New Bonus | % of Target |
|---|---|---|---|
| | **$11,500** | **$63,750**<br>Target $51,000 (20%) | **125.0%** |

## More Information
### Historical Data

 ⊟ Base   ■ Cash Bonus   ⊞ Long Term Incentive Value



Note that this statement reflects only the compensation elements that are part of the annual planning process (e.g., base salary and/or annual incentive bonus).
This statement describes certain terms of Honeywell's compensation and employee benefit plans and programs (the "Plans"). The award agreements, Plan documents and prospectuses/summary plan descriptions govern if there is an inconsistency. Honeywell reserves the right to amend, modify or terminate a Plan in its sole discretion, subject to shareowner approval if required. Consult the Plan documents for more information.
Receipt of this statement does not guarantee your eligibility for any current or future Plan benefit, and the Plans do not constitute an employment contract with Honeywell or give you the right to continue in Honeywell employment.
For Primary Managers Only – Subject to applicable law and any required consultation/ negotiation, any merit increase for this manager may be suspended or cancelled if the manager does not complete the performance process (that is, approve employees' goals and discuss them with employees) by the due dates.

 **Honeywell**

# EXHIBIT "4"

**From:** Emer, Charles <Charles.Emer@Honeywell.com>
**Sent:** Thursday, October 15, 2020 7:16 PM
**To:** Corrigan, Greta <Greta.Corrigan@Honeywell.com>
**Cc:** Malani, Sunaina <Sunaina.Malani@Honeywell.com>
**Subject:** Confidential!

Hi Greta,

Further to our meeting yesterday I want to be clear that my goal is to **clear any conflicts and improve working environment and relationships** and most importantly avoid retaliation. Am not at all interested in disciplinary action against anyone. We have a big task to shoulder and support Darrius's digital transformation goals critical to our company's survival into the future. We need harmony in the team. Your help here will be highly appreciated.

Thanking you in advance and kindest regards

Charles Emer
Sr. Director Data Management and Governance Strategy
Honeywell International
Office: +19734552581 Mobile: +19736102845
charles.emer@honeywell.com
www.Honeywell.com

'Impossible is an opinion not fact!'

1

# EXHIBIT "5"

**From:** Magana Lopez, Miriam <Miriam.Magana@Honeywell.com>
**Sent:** Tuesday, December 8, 2020 1:06 PM
**To:** Emer, Charles
**Subject:** 1:1 Charles - Miriam
**When:** Friday, December 11, 2020 1:00 PM-1:45 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:** Microsoft Teams Meeting
**Importance:** High
**Sensitivity:** Private

Hi Charles,

I was assigned to follow up on a concern you recently raised to your HRG. The purpose of this call is to get additional detail on the incident as well as any additional background that you believe could be relevant for this investigation.

Thanks

Miriam M.

Sr HRM

---

# Microsoft Teams meeting

**Join on your computer or mobile app**

Click here to join the meeting

**Join with a video conferencing device**

631130040@t.plcm.vc

Video Conference ID: 117 526 932 3

Alternate VTC dialing instructions

**Or call in (audio only)**

+1 980-279-8729,,392902186#   United States, Charlotte

Phone Conference ID: 392 902 186#

Find a local number | Reset PIN

Visit hwll.co/ucc or click help for more information about Microsoft Teams Rollout

Learn More | Help | Meeting options

---

# EXHIBIT "6"

**From:** Emer, Charles
**Sent:** Wednesday, March 3, 2021 4:52 PM
**To:** 'Magana Lopez, Miriam' <Miriam.Magana@Honeywell.com>; Williams, Kourtney
<Kourtney.Williams@Honeywell.com>
**Cc:** Lim, Cheryl <Cheryl.Lim@honeywell.com>
**Subject:** CONFIDENTIAL! Need to discuss my Performance Review Bias
**Sensitivity:** Private

Hi Miriam/Kourtney,

I just came out of my performance review with Ravi. While I highly appreciate and welcome feedback. I
am taken aback with some of the behavior assessments. Which are contrary to 2019 when I received
high praises from the leadership Team and was awarded 25% Bonus, 9.5% salary increment and an LTI
worth 500 points for exceeding Honeywell behaviors. Notably I was rated at 3, denied salary increment
and only awarded 40% of target 20% . From 63k in 2019 to 20k for 2020. Please see attached my
performance review for 2019 by Maureen and Ravi's review for 2020. I believe this is an unfair,
biased  and retaliatory review by Ravi. For the reasons I also added in my comments to the review and
earlier reports to HR.

Please advise

# EXHIBIT "7"

On Mar 4, 2021, at 1:32 AM, Emer, Charles <Charles.Emer@honeywell.com> wrote:

Hi Greg,

Hope you are well. I am forwarding to you an email I sent to HR below. Its 1 am EST and I cannot sleep. Am feeling totally humiliated by Ravi's biased and retaliatory performance assessment today.  I can strongly say that I have worked extremely hard to build the strong Data management and Governance capabilities in EIM and especially last year after Maureen left to keep EIM programs a float and successful. Even more so after Ravi joined since June last year, I continued to drive the operating model and MOS and help bring Ravi up to speed on the basic concepts of Data management and Governance (a new field to him). But from the get go Ravi clearly demonstrated he is not a fan of me. I raised this issue to HR last year but today he clearly retaliated in the most painful way. The difference in my assessment from 2019 and 2020 are night and day, he uses petty human errors to drag my value down which hunt. I am fully convinced he wants me to leave the organization. But I will not because I am fully committed to Honeywell and know how much value I bring to the transformation effort we are all perusing for the Company. I have built a strong and highly performing team (DQ COE, DG CE and MDM COE) from scratch and cannot accept this intentional biased discriminatory action to drag me down..

I apologize for taking your precious time away from more important work but I am reaching and crying out for your help and advise please if you can spare a few moments of your time to meet with me on this.

Thank you

# EXHIBIT "8"

**From:** Emer, Charles <Charles.Emer@Honeywell.com>
**Sent:** Thursday, March 4, 2021 4:46 AM
**To:** Jordan, Sheila <Sheila.Jordan@Honeywell.com>
**Subject:** CONFIDENTIAL! Performance Review Bias
**Sensitivity:** Private

Hi Sheila

Hope you are well. I am forwarding to you an email I sent to HR below. Its 1 am EST and I cannot sleep.
Am feeling totally humiliated by Ravi's biased and retaliatory performance assessment today. I can
strongly say that I have worked extremely hard to build the strong Data management and Governance
capabilities in EIM and especially last year after Maureen left to keep EIM programs a float and
successful. Even more so after Ravi joined since June last year, I continued to drive the operating model
and MOS and help bring Ravi up to speed on the basic concepts of Data management and Governance (a
new field to him). But from the get go Ravi clearly demonstrated he is not a fan of me. The difference in
my assessment from 2019 and 2020 are night and day, he uses I am convinced he wants me to leave
the organization. But I will not because I am fully committed to Honeywell and know how much
value I bring to the transformation outcomes we are all pursuing for the Company. I have built a
strong and highly performing team (DQ COE, DG CE and MDM COE) from scratch and cannot accept
this intentional unfair action to drag me down..

While I highly appreciate and welcome feedback. I am taken aback with some of the behavior
assessments. Which are contrary to 2019 when I received high praises from the leadership Team and
was awarded 25% Bonus, 9.5% salary increment and an LTI worth 500 points for exceeding Honeywell
behaviors.

I feel it was bias and punitive for Ravi rate me at below Honeywell Standard, deny me a mere 3% salary increment (which all my reports received) and only award 40% of target 20% . From 63k in 2019 to 20k for 2020. Please see attached my performance review for 2019 by Maureen and Ravi's review for 2020. I believe the review to be subjective biased and retaliatory by Ravi which I strongly reject.

I kindly ask for  your support for an independent more objective review

Thank you

# EXHIBIT "9"

**From:** Jordan, Sheila <Sheila.Jordan@Honeywell.com>
**Sent:** Friday, March 5, 2021 10:04 AM
**To:** Emer, Charles <Charles.Emer@Honeywell.com>
**Cc:** Lim, Cheryl <Cheryl.Lim@honeywell.com>
**Subject:** RE: Correction RE: CONFIDENTIAL! Performance Review Bias
**Sensitivity:** Private

I appreciate your sentiment. I have worked with Ravi for years and have never found him to be biased or unfair. But HR will certainly look into this. Personally there have been times in my career that I received feedback that I didn't feel was accurate. Upon reflection there were indeed some kernels of truth and for me that tough feedback simply made me stronger and better.

We do value you and your contributions to Honeywell. The feedback is always intended to allow you to have an even stronger impact to the company and those you interact with and influence.

Thanks Charles

# EXHIBIT "10"

Good morning Charles

I will forward your request for an independent investigation to our Honeywell Access Integrity Helpline team, or you may do so yourself by sending an email to AccessIntegrityHelpline@honeywell.com

Whilst I cannot pre-empt the outcome of this investigation, I can assure you it will be appropriately investigated in accordance with Honeywell's Integrity and Compliance policy and will not be subject to any form of retaliation.  Please visit Honeywell's integrity and compliance home page for more information: https://honeywellprod.sharepoint.com/sites/DWP-Functions/law/Integrity-Compliance/Pages/IC-Home1.aspx

Cheryl

**From:** Emer, Charles <Charles.Emer@Honeywell.com>
**Sent:** Monday, March 22, 2021 8:54 AM
**To:** Lim, Cheryl <Cheryl.Lim@honeywell.com>
**Cc:** Mattimore, Karen <Karen.Mattimore@honeywell.com>
**Subject:** CONFIDENTIAL! Request for formal investigation and decision on discriminatory behavior towards me

Cheryl,

Further to our earlier discussion and my follow ups. I still have not received any feedback. Hence I wish to request a formal independent investigation and decision on my complaint against Ravi's discriminatory acts towards me:

1. Ravi denied me due process. I was not provided an opportunity to respond to numerous unfounded (meritless) charges prior to being entered in my HPD. Throughout the year Ravi never had any 1:1 meetings with me on any of the accusations explicitly alleged against my behaviors in HPD. The first time I heard of them was on the performance review day itself. He used this as a basis to deny me my annual salary increment and 40-60% of my target bonus
2. Ravi singled me out and treaded me unequally and differently from my pears (His Staff)

3. From June 2020 when Ravi joined Honeywell he clearly demonstrated a dislike for me the moment he set eyes on me which I strongly believe is because of my race

Remedy:

1. Remove the unfounded assessment from my records
2. Payout 80% of target Bonus and effect my 3% salary increase.
3. Provide me with protection from retaliation.
4. Any other damages

Best regards

Charles Emer

# EXHIBIT "11"

**From:** Emer, Charles
**Sent:** Wednesday, May 19, 2021 3:16 PM
**To:** Wagar, Kristie <Kristie.Wagar@Honeywell.com>
**Subject:** Update RE: Thank You RE: HR Interview


Hi Kristie,


Hope you are well! I just wanted to share with you that today Ravi reused my presentation and talking points at the BPDC (Business Process and Data Council) chaired by Tim Mahoney and attended by numerous Honeywell Leaders as his own vision. He did not acknowledge me. This is ironic because in my HPD he reprimanded me that the same presentation slide I created and made October 22, 2020 was *'conceptual and abstract lacking Hon business relevant information"*. I presented this last year at the same BPDC! Please let me know if you need clarification.


I have attached both Todays presentation that Ravi made (see slide #9) and the one I made last years (slide # 6).


Best regards

# EXHIBIT "12"

From: **Charles Emer** <charlesemer@gmail.com>
Date: Wed, Sep 14, 2022 at 7:08 PM
Subject: Urgent! Racial Dicrimination and Profiling at Honeywell
To: <Darius.AdamczyK@honeywell.com>


Dear Darius,

My name is Charles Emer a Black/African staff member at Honeywell. I have been a staff member at Honeywell as Sr Director Data Management and Governance for the last 4 years helping build the Master Data Management and Governance practice from ground up. The program is the connective tissue driving digital transformation at Honeywell today.

I have twice reported racial discrimination and profiling against me by Ravi Sankar VP Information Management and Analytics with unsatisfactory response from HR.

Since reporting to HR Ravi Sankar has constantly retalaited against me, verbally warning me that I dug my own grave reporting him to HR and thay ny time at Honeywell is counting down. The retaliation has been relentless resulting in me loosing my bonuses, increments and even LTI. Last week Ravi decided to eliminate my role siting force reduction. But it's clear the decision was retaliation for my racial discrimination report against him . Am well aware that Honeywells trasformation agenda is highly reliant on a strong data foundation enabled by the role and team I led.

I believe this action is not aligned to your strong policy of non discrimination and fair treatment of all Honeywell staff and most if all non retaliation for reporting such breaches.

Am an African originally from Uganda a first in my family to go to college. I support over 30 kids and orphans back in Uganda for their education and daily subsistence. I work hard and have been loyal to Honeywell amidst the worst treatment by Ravi Sankar for clearly favours only people of Indian Origin and has an issue with Africans.

Prior to joing Honeywell I worked successfully for the United Nations as a senior data leader and experienced no discrimination instead winning the UN Secretary Generals millennium award for excellence. My first encounter of discrimination is at Honeywell.

Am requesting and begging for your immediate intervention to get to the bottom of this.

Best regards

Charles Emer H326700
Tel 7317895222
Charlesemer@gmail.com

# EXHIBIT "13"

From: **Carpenter, Jennifer** <Jennifer.Carpenter@honeywell.com>
Date: Fri, Sep 16, 2022 at 10:47 AM
Subject: Honeywell Email Follow Up
To: Charlesemer@gmail.com <Charlesemer@gmail.com>

HI Charles,

I am following up regarding the email you sent this week regarding several concerns you have.

I wanted to let you know we have received your email.  We are taking your concerns and allegation seriously; and have opened an investigation.  An investigator will be in contact with you early next week.

Thanks,

Jennifer Carpenter

VP, Human Resources



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 27081938**
**Date Processed: 06/09/2023**

| | |
|---|---|
| **Primary Contact:** | Julie Milligan<br>Honeywell International<br>855 S Mint St<br>Charlotte, NC 28202-1517 |

| | |
|---|---|
| **Entity:** | Honeywell International Inc.<br>Entity ID Number  2034040 |
| **Entity Served:** | Honeywell International, Inc |
| **Title of Action:** | Charles Emer vs. Honeywell International, Inc. |
| **Matter Name/ID:** | Charles Emer vs. Honeywell International, Inc. (14178410) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court/Agency:** | Morris County Superior Court, NJ |
| **Case/Reference No:** | MRS-L-000981-23 |
| **Jurisdiction Served:** | New Jersey |
| **Date Served on CSC:** | 06/09/2023 |
| **Answer or Appearance Due:** | 35 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Hyderally & Associates, P.C.<br>973-509-8500 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**Ty Hyderally, Esq. (ID#023231993)**
**Hyderally & Associates, P.C.**
33 Plymouth Street, Suite 202
Montclair, New Jersey 07042
Telephone (973) 509-8500
Facsimile (973) 509-8501
Attorneys for Plaintiff: Charles Emer

| | |
|---|---|
| **CHARLES EMER,** | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MORRIS COUNTY<br>DOCKET NO. MRS-L-0981-23 |
| **PLAINTIFF,** | |
| **VS.** | CIVIL ACTION |
| **HONEYWELL INTERNATIONAL, INC.,<br>RAVI SANKAR, JOHN DOES 1-10,<br>AND XYZ CORP. 1-10,** | **SUMMONS** |
| **DEFENDANTS.** | |

**HONEYWELL INTERNATIONAL, INC.**

From The State of New Jersey To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (The address of each deputy clerk of the Superior Court is provided.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). A list of these offices is provided. If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A list of these numbers is also provided.

*Michelle M. Smith, Esq.*

Michelle M. Smith, Esq.,
Clerk of the Superior Court

DATED: **June 7, 2023**

**Name of Defendant to be served:**

**HONEYWELL INTERNATIONAL, INC.**

**Address of the Defendant to be served:**

**C/O: CORPORATION SERVICE COMPANY**
**PRINCETON SOUTH CORPORATE CENTER, SUITE 160**
**100 CHARLES EWING BLVD.**
**EWING,NJ 08628**

**Phone Number:**

T:\Emer Charles\Pleadings\060623.SUM Honeywell.doc

2